**UNITED STATES of America, Plaintiff,**

v.

**Victor POSNER and William Scharrer, Defendants.**

**No. 82–352–EPS (Criminal).**

United States District Court,
S.D. Florida,
Miami Division.

Aug. 3, 1984.

K. Chris Todd, Neil S. Cartusciello, Asst. U.S. Attys., S.D.N.Y., New York City, for plaintiff.

Edward Bennett Williams, Washington, D.C., for defendant Posner.

Hugh F. Culverhouse, Jr., Miami, Fla., for defendant Scharrer.

## MEMORANDUM OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DENYING DEFENDANT POSNER'S MOTION TO DISMISS THE INDICTMENT OR SUPPRESS EVIDENCE

SPELLMAN, District Judge.

THIS CAUSE came before the Court on Defendant POSNER's Motion to Dismiss the Indictment or Suppress Evidence By Reason of the Government's Violation of His Constitutional Rights and of Its Own Standards of Procedure, filed July 28, 1983, docket no. 37. Having reviewed the record in this cause, conducted extensive *in camera* document reviews and several days of evidentiary hearings, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that the Motion is DENIED.[1] The following opinion in narrative form constitutes the Findings of Fact and Conclusions of Law of the Court for the purposes of this Motion.

This case concerns the criminal prosecution of a taxpayer, Victor Posner, and a real estate broker who acted as an appraiser, William Scharrer, for the alleged overvaluation of real property donated to Miami Christian College for the alleged purpose of obtaining an inflated charitable tax deduction for Posner.[2]

---

1. The Court originally denied this motion in an order dated September 26, 1983 and stated that a memorandum opinion would follow.

2. The indictment presently under attack is the second superseding indictment. It charges the defendants as follows: Count I charges Posner and Scharrer with conspiracy under 18 U.S.C. § 371; Count II charges Posner with tax evasion for 1976 under 26 U.S.C. § 7201; Count III charges Posner with tax evasion for 1977 under 26 U.S.C. § 7201; Count IV charges Posner and Scharrer with tax evasion and aiding and abetting tax evasion, respectively, for 1978 under 26 U.S.C. § 7201 and 18 U.S.C. § 2; Count V charges Posner with tax evasion for 1979 under 26 U.S.C. § 7201; Counts VI–X charge Posner with filing false tax returns for 1975 through 1979, respectively, under 26 U.S.C. § 7206(1); Counts XI–XII charge Scharrer with aiding the filing of false tax returns for 1975 and 1978 under 26 U.S.C. § 7206(2).

The multiple counts originate in the manner in which the charitable deduction was taken. The tax code permits a large deduction to be spread over several years. Posner made his first donation of land in 1975. He deducted that gift on his 1975, 1976, and 1977 tax returns. The second gift was made in 1978. The deduction for that gift was taken in 1978 and 1979.

Through a trust, Posner owned a large tract of land in southwest Miami, in Dade County, Florida. A parcel of the land was donated to Miami Christian College in December of 1975; and a smaller contiguous tract was donated to the College in 1978.

Scharrer did an appraisal of the land for tax purposes. The government asserts that both Posner and Scharrer knew the appraised value was falsely inflated and that this figure was arrived at with the intent of deceiving the IRS by taking an excessive tax deduction for a charitable contribution.

Posner attacks the indictment and alternatively moves to suppress evidence because of alleged misconduct by the IRS during the investigatory phase of this case.

Beginning with the 1970 tax year, the IRS has conducted "team audits" of the tax returns filed by Victor Posner and the various companies in which he owns a controlling interest. These audits have been conducted by revenue agents permanently stationed on the premises of Posner's offices and those of his companies. Generally, at least six agents have been assigned to these audits, with four or five of them stationed regularly in Posner's corporate headquarters located in the Victorian Plaza, Miami Beach, Florida. In addition, three or four specialists worked on the Posner audits in Miami.

On October 17, 1979 Revenue Agent David Langlois of the civil audit team in Miami requested that Posner, through his tax advisor, Martin Rosen, provide the IRS with documents relating to the 1975 charitable contribution to Miami Christian College (MCC). On October 23 and December 31, 1979, Rosen supplied the civil audit team with all the documents in Posner's possession dating to 1967 pertaining to the MCC property. These documents are crit-

ical to the instant prosecution and are the subject of this motion.[3]

At the time that the civil auditors requested these documents and Rosen supplied them, a grand jury was investigating Posner for possible criminal violations of the securities laws, and the IRS was in the process of authorizing the grand jury to expand its investigation into possible criminal violations of the tax laws. In this motion, Posner claims that it was a violation of the IRS procedures to continue the civil audit once a criminal investigation has begun.[4] Moreover, Posner argues that the failure of the IRS to stop the civil audit misled Rosen into continuing to cooperate and give documents over to the IRS. Had Rosen known of the criminal investigation, he would have stopped providing the documents and would have referred Posner to counsel experienced in criminal matters. Posner further argues that this gathering of information for use in a criminal prosecution under the guise of a civil audit violated his Fourth Amendment right to be free from unreasonable searches and seizures.

As set forth in detail below, the Court finds that neither dismissal of the indictment nor suppression of the evidence is warranted, because (1) technically there were no violations of IRS procedures in continuing the civil audit; (2) under the circumstances of this case the revenue agents conducting the civil audit did not have an affirmative duty to advise Posner's counsel that a grand jury request had been made to the Tax Division, Department of Justice; and (3) the revenue agents did not affirmatively misrepresent the nature of the IRS investigation to Posner's tax counsel.

THE SEC INVESTIGATION

In 1976 the United States Securities and Exchange Commission ("SEC") began in-

---

Scharrer acted as an appraiser with respect to both gifts.

**3.** The Court notes that IRS regulations require a taxpayer who claims a charitable deduction of more than $200 based on a contribution of property to attach to his tax return a copy of the appraisal on the land and documents showing

the original purchase of the land. Internal Revenue Code Regulation, Section 1.170A–1. Notwithstanding this requirement, Posner did not attach this information to his returns.

**4.** Defendant Scharrer lacked standing to participate in this motion.

vestigating Victor Posner and companies he controlled, and ultimately on September 20, 1977 the SEC filed a complaint in the United States District Court for the District of Columbia charging Posner and others with violations of the federal securities laws, misrepresentation, deceit and fraud.[5] The complaint alleged that Posner and his son and daughter caused companies he controlled to pay for a variety of personal expenses including a $100,000 per year suite at the Plaza Hotel in New York City, limousines, chauffeurs, personal servants, travel on corporate jets, use of corporate yachts, liquor, groceries and restaurant tabs. Nothing in this complaint related to the instant allegations concerning improper deductions taken for charitable contributions.

Prior to filing this civil complaint, an attorney with the Enforcement Division of the SEC working on the Posner investigation, contacted the IRS Criminal Investigation Division ("CID") in Miami to discuss information derived from the investigation, in an effort to interest the IRS in a criminal tax investigation of Posner. Apparently, the CID in Miami had no interest in conducting a criminal tax investigation of Posner based on the SEC's information.

During the SEC investigation in July or August of 1977, Posner's attorney and tax advisor, Martin Rosen, Esq., was informed that the United States Attorney's Office for the Southern District of New York had a potential interest in a securities fraud criminal case. Martin Rosen testified that "[w]e knew there was an interest by the United States Attorney's office in the Southern District in the potential criminal effect of the securities settlement." Rosen was, and is, an experienced tax counsel and former IRS Revenue Agent. As a result of being informed that the United States Attorney's Office was considering possible criminal charges against Posner, the attorneys representing Posner discussed this matter and, notwithstanding the potential criminal charges, recommended that Posner consent to the entry of a judgment against him.

Posner consented to the entry of a judgment and order by the United States District Court of the District of Columbia which enjoined Posner from violating the federal securities laws and which required that he and others repay $600,000 to public companies he controlled. Further, this consent judgment and order provided for an audit committee which subsequently recommended that Posner and others reimburse these public companies approximately $1,000,000 to repay personal expenditures which had come from corporate funds.

Thereafter, the SEC files were referred to the U.S. Attorney's Office in the Southern District of New York for criminal investigation. A grand jury then was empaneled to investigate Victor Posner, various companies he controlled and various other individuals. Under the direction of Assistant U.S. Attorney Martin McNamara, the grand jury investigated possible violations of the federal securities laws and of 18 U.S.C. §§ 371, 1001, 1341 and 1343. Posner was totally unaware that the U.S. Attorney's Office was pursuing a criminal case against him and that he was the subject of a grand jury investigation.

EXPANSION OF THE GRAND JURY INVESTIGATION TO INCLUDE TAX OFFENSES

In February, 1979, Assistant U.S. Attorney McNamara contacted the CID in the Manhattan District regarding his desire to request a separate grand jury investigation into possible criminal violations of federal income tax laws by Victor Posner. McNamara spoke about this matter with officials from the Manhattan CID and also provided information derived from the SEC's and the U.S. Attorney's Office investigation of Posner to the CID.

Based on information received from McNamara, including information contained in documents derived from the SEC

---

**5.** *United States v. Sharon Steel Corporation, NVF Co., Victor Posner, Steven Posner, Gail Posner Cohen, Fingol Bloom, Walter Gregg, Bernard Krakower, Guy McCracken, DWG Corp., Pennsylvania Engineering Corp.,* Civil Action No. 77–1631 (D.D.C. September 20, 1977).

investigation into Posner's affairs, a special agent from the Manhattan CID "numbered" the 1975 and 1976 tax returns of Posner and several of the companies controlled by him on March 1, 1979. The agent understood that when he "numbered" the case, that meant that a criminal investigation into Posner's tax returns had been opened.[6]

On March 2, 1979, Assistant U.S. Attorney McNamara began the administrative process to obtain authorization to conduct a grand jury investigation into tax-related offenses.

Each indictment concerning violations of the federal criminal tax laws first must be authorized by the Assistant Attorney General of the Tax Division, Department of Justice, upon the recommendation of the Criminal Section, Tax Division, Department of Justice. Likewise, before a grand jury investigation of possible violations of the federal criminal tax laws may be initiated by a United States Attorney's Office, the Tax Division of the Department of Justice must first authorize such an investigation. Before the Tax Division will authorize a grand jury investigation of any person or entity, it first obtains from the Internal Revenue Service a commitment of staff and resources for assistance to the grand jury.

In this case, the Criminal Section, Tax Division, Department of Justice, received the grand jury authorization request from the United States Attorney's Office, Southern District of New York, in March, 1979. It then forwarded the request to the chief counsel of the IRS. From Chief Counsel's Office, IRS, the request proceeded through numerous levels of review within the IRS.[7] The Criminal Section of the Tax Division finally authorized a grand jury investigation on February 12, 1980.[8]

Thus, it took almost eleven months for the IRS to complete the grand jury review process. During this entire time Posner was undergoing civil audits, and his tax counsel were completely unaware that a criminal tax investigation was being considered. Although the eleven month period appears excessive, there is no evidence in this case that the IRS intentionally delayed the review process so as to take advantage of the civil audit. *Cf. United States v. LaSalle National Bank*, 437 U.S. 298, 317, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978)

---

6. According to section 410(1) of the Internal Revenue Manual (Sept. 27, 1978), a case is "numbered" when the Criminal Investigation Division "determines that an item has prosecution potential."

7. The request proceeded as follows:

| March 22, 1979 | Grand Jury authorization request received by Chief Counsel, IRS, from Criminal Section, Tax Division, Department of Justice |
| March 29, 1979 | Request forwarded from Chief Counsel, IRS, to Director, Criminal Investigation Division, IRS |
| April 3, 1979 | Request forwarded from Director, Criminal Investigation Division, IRS to Regional Commissioner, IRS (North Atlantic Region) |
| April 12, 1979 | Request forwarded from Regional Commissioner, IRS (North Atlantic Region), to District Director, IRS (Manhattan, New York) |
| September 14, 1979 | Regional Counsel (Criminal Tax) IRS North Atlantic Region made a recommendation to Criminal Investigation Division IRS (Manhattan, New York) |
| October 12, 1979 | District Director, IRS (Manhattan, New York), forwarded Request to Regional Commissioner, IRS (North Atlantic Region) |
| November 8, 1979 | Regional Commissioner, IRS, North Atlantic Regional Counsel, IRS (North Atlantic Region) |
| February 2, 1980 | Regional Counsel, IRS, returned the Request to Criminal Section, Tax Division, Department of Justice |
| February 12, 1980 | Criminal Section, Tax Division, authorized a grand jury investigation in this matter. |

8. During the period January, 1979, through February, 1980, the IRS procedures dealing with the various levels of IRS review of a request for grand jury assistance were described in Section 9267.2 of the Internal Revenue Manual (November 16, 1978) hereinafter "IRM (11/16/78)". Approval to commit IRS resources could be sought in two ways: (1) the so-called "direct referral" method described in Section 9267.-2(7)(e) through (x) of IRM (11/16/78); or (2) the so-called "pinnacle approach" described in Section 9267.2(7)(m) through (*o*) IRM (11/16/78). As is obvious from footnote 7 and the extensive time lapse, the pinnacle approach was utilized in this case.

("[w]e shall not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution"). Indeed, there was evidence presented to this Court that such a long period of time was not unusual during the period between 1977 and 1981 when this method of grand jury review was utilized by the IRS.[9]

During the eleven month period there was, however, a certain amount of interaction between those persons in the IRS who were determining whether to authorize a grand jury investigation into possible tax violations, and the civil auditors of Posner's returns. For example, in late April 1979, a special agent from the Manhattan CID contacted the case manager of Posner's civil audit team in Miami and requested copies of all tax returns relating to Posner and his various corporations. This request was normal and regular since the Internal Revenue Service requires that special agents prepare a fact sheet utilizing the tax returns.

Officials from the Manhattan District and North Atlantic Region of the IRS also visited Miami from June 12 through June 14, 1979 and met with members of the team conducting the civil audit of Posner's returns. During these meetings, there were a detailed, in-depth discussions pertaining to what the civil audit team had done and what it anticipated doing.

The case manager of the Posner's civil audit team, H.V. "Bill" Martin, was concerned about continuing a civil audit while another district was pursuing a criminal investigation. He, therefore, asked the visiting personnel what the civil audit team should be doing. Deputy Regional Counsel Robert Kraft told Martin that the civil audit team should "proceed with [its] examination as if they had not been here." Kraft testified before this Court that he used this phrase to convey to Martin the

fact that the visit by Manhattan IRS personnel was not intended to interfere with the civil audit. Kraft asserted that this advise was given in the reasonable, good-faith belief that the civil audit was not required to, and should not, cease.

During the meeting between CID personnel from Manhattan and the civil audit team in Miami, the civil audit team provided the personnel from Manhattan with copies of all the corporate tax returns for the companies controlled by Posner, Posner's individual tax returns, some internal control documents, a revenue agent's report for the already completed audit of Posner's 1973 and 1974 returns, and other documents. Collection of these documents was not improper and the meeting was technically in accord with Internal Revenue Manual provisions.

There is no evidence that the Miami civil auditors were ever directed or requested to gather evidence for the Criminal Investigation Division; nor evidence that the Manhattan Criminal Investigation Division was engaged in an active investigation other than to gather evidence to aid in the determination of whether the IRS should approve the United States Attorney's request for grand jury assistance.

When the IRS review was finally completed in February, 1980, and after the Tax Division had authorized the grand jury investigation, the civil audit of Posner was terminated. At this time the civil audit team had found *no* independent evidence of fraud with regard to Posner's 1975 and 1976 tax returns.

Between March 4 and 7, 1980, members of the Posner civil audit team in Miami met with an Assistant U.S. Attorney from the Southern District of New York and various IRS officials. The civil audit team turned over or gave access to, all of the files pertaining to the civil examination of Posner's 1975 and 1976 returns, including all of the documents made available by Pos-

---

**9.** Three other review periods took longer than the instant review; two others took the same amount of time; seven others took slightly less

than this one. A total of twenty-four consumed more than six months.

ner's tax counsel regarding the 1975 charitable contribution to MCC.

On May 22, 1980, co-defendant William Scharrer testified before the grand jury concerning his appraisal of Posner's 1975 land contribution to MCC. Thus, it is apparent that the grand jury investigation began to focus on the land contribution issue as a result of the documents turned over by the civil audit team to the Manhattan CID and the U.S. Attorney's Office in March, 1980.

## CONCLUSIONS OF LAW

■ This Court finds that under IRS rules and regulations, there was no requirement that the IRS cease a civil audit of a taxpayer because the IRS receives a request for grand jury assistance relating to that taxpayer. The IRS is charged with the responsibility of both civil and criminal enforcement of the federal tax laws. The Examination Division of the IRS has the duty of assessing tax liability in administration of the Internal Revenue Code. *See* 26 U.S.C. § 7601. "The institutional responsibility of the Service to calculate and to collect civil fraud penalties and fraudulently reported or unreported taxes is not necessarily overturned by a single agent who attempts to build a criminal case." *United States v. LaSalle National Bank*, 437 U.S. 298, 314, 98 S.Ct. 2357, 2366, 57 L.Ed.2d 221 (1978).

■ The civil audit team in the present case always had a legitimate civil purpose and was not, by any means, merely gathering evidence for the Department of Justice. Moreover, the audit had begun before there was any discussion of a criminal investigation.[10]

■ It is further the judgment of this Court that Posner has failed to show that his attorneys' consent to the disclosure of documents was ineffective in that it was obtained by fraud or misrepresentation of the true nature of the investigation. It is well settled that "a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery or misrepresentation of the Internal Revenue Agent." *United States v. Tweel*, 550 F.2d 297, 299 (5th Cir.1977) (citing cases). In order to prevail on a claim of ineffective consent on these grounds, the defendant must show by clear and convincing evidence that the agent materially misrepresented the nature of the inquiry. *United States v. Wuagneux*, 683 F.2d 1343, 1347 (11th Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1984); *United States v. Dawson*, 486 F.2d 1326, 1329 (5th Cir.1973); *United States v. Prudden*, 424 F.2d 1021, 1032–33 (5th Cir.), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970).

Posner acknowledges that no affirmative misrepresentations were made in this case, but argues that the continuation of the civil audit which was against established procedure combined with the agent's silence concerning a criminal tax violation was intentionally misleading.

This Court has already found against Posner on the first prong of this argument. There was no violation of IRS procedures in continuing the civil audit while the IRS was going through the process of determining whether to authorize a grand jury investigation.

■ Moreover, the revenue agent's silence about the possibility of a grand jury investigation of possible criminal tax viola-

---

**10.** In arguing that the IRS was required to stop its audit, Posner relies on Section 10(91)(1) of the Internal Revenue Manual which provides that during the course of an audit, if IRS revenue agents find indications of fraud, they should cease the audit "at the earliest opportunity" and recommend the case to the Criminal Investigation Division. The record in this case, however, shows clearly that the members of the civil audit team never discovered any indica-

tions of fraud in Posner's tax returns, including the subject matter of the instant indictment. The Court notes that even if the continuation of the civil audit had violated some IRS procedure, the Court does not have the authority to compel an agency of the government to comply with its established procedures, absent some breach of the law. *See United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).

tions was not improper under the circumstances. In *United States v. Prudden,* the Court held that "silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading." 424 F.2d at 1032. Such was the case in *Tweel* where the agent misled a taxpayer's accountant by only partially answering his inquiry as to the nature of the investigation.

In the present case, however, there was no inquiry by Posner or Rosen that was "left unanswered." Nor was there a duty to speak on behalf of the revenue agents.

The revenue agents in Miami conducting the civil audit knew that the United States Attorney's Office in the Southern District of New York was conducting a grand jury investigation concerning possible criminal violations of the federal securities laws and that there had been a request to the IRS for authorization to permit the grand jury to also explore the possibility of criminal tax violations arising out of the same transactions. At the time that the civil auditors requested documents concerning the land Posner donated to the Miami Christian College there was as yet no firm institutional commitment on the part of the IRS to authorize a criminal investigation. But even more importantly, whatever criminal charges were being considered at the time of the request had nothing to do with any alleged fraud concerning Posner's charitable contributions. Rather, the United States Attorney's Office and the IRS Criminal Investigation Division were exploring the possibility of criminal tax violations stemming from the improper use of corporate funds to pay for personal expenditures. The only connection between the area of inquiry and the materials requested of Rosen concerning the charitable contribution to MCC is that they relate to the same tax year.

**11.** Although the conduct of the IRS does not warrant suppression in this case, this Court is very concerned about procedures which result in the entwining of activities of the civil and criminal divisions of the IRS and the Office of

■ Under these circumstances, the Court finds that there was no deception on the part of the IRS in failing to inform Posner or his tax advisor that there may be a criminal investigation pertaining to his tax returns.

The Court does not reach the questions of the applicability of the doctrines of good faith and inevitability to the evidentiary issues of this case. Moreover, the Court rejects the government's eleventh hour attack on Posner's standing to assert a violation of his constitutional rights in regard to the acquisition by the criminal section of the IRS of documents pertaining to one of his trusts.

■ Because the Court finds that there is insufficient evidence to warrant suppression, *a fortiori,* the indictment shall not be dismissed.[11]

the United States Attorney as was demonstrated in this case. These procedures may be technically legal, but there is a vast potential for abuse inherent in such a situation.